UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

MAXIMILLIANO LORENZO ZAMORA,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

No. 1:26-cv-02448-JLT-GSA

**FINDINGS AND RECOMMENDATIONS TO GRANT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, TO DENY DEFENDANT'S CROSS MOTION, AND TO DIRECT ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF AND AGAINST DEFENDANT COMMISSIONER OF SOCIAL SECURITY**

**(Docs. 10, 11, 12, 13)**

## I. Introduction

Plaintiff Maximilliano Lorenzo Zamora seeks judicial review of a final decision of Defendant Commissioner of Social Security denying his applications for child's insurance benefits and supplemental security income pursuant to Title XVI of the Social Security Act. The matter is before the undersigned for issuance of Findings and Recommendations based on the parties' briefs. After reviewing the record, the undersigned finds that substantial evidence and applicable law do not support the ALJ's decision and recommends that the Court direct entry of judgment in favor of Plaintiff and against Defendant.

## II. Factual and Procedural Background

Plaintiff filed the applications on February 27, 2020 and August 26, 2020, respectively. The claim was denied initially on August 4, 2020, and on reconsideration on September 23, 2020. The ALJ held a hearing on March 22, 2022. On April 7, 2022, the ALJ issued an unfavorable decision. After the Appeals Council denied review on April 27, 2023, Plaintiff appealed to this Court and the case was remanded. On August 18, 2025, a second hearing was held. On September 9, 2025, an ALJ again denied Plaintiff's claims. On February 9, 2026, the Appeals Council denied review.

## III. Standard of Review

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).

Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted). If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

## IV. Evaluating a Claimant's Alleged Disability

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has

established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f). While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education, and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

Finally, errors in Social Security disability determinations are subject to harmless error analysis. Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014); Ludwig v. Astrue, 681 F.3d 1047, 1054 (9th Cir. 2012). "An error is harmless if it is 'inconsequential to the ultimate nondisability determination' . . . or 'if the agency's path may be reasonably discerned,' even if the agency 'explains its decision with less than ideal clarity[.]" Treichler, 775 F.3d at 1099 (citation omitted).

## V. The ALJ's Decision

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 15, 2004, the alleged onset date. AR 482.

At step two, the ALJ found that Plaintiff had the following severe medically determinable impairments: autism and borderline intellectual functioning. AR 482.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

Prior to step four, the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded as follows:

> I find the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: He can perform jobs of a non-complex nature requiring the performance of no more than simple, routine tasks, and he can maintain occasional contact with supervisors and co-workers. The claimant should have no contact with members of the general public, and he should not work in environments requiring daily or hourly production quotas such as assembly line work.

AR 485.

At step four, the ALJ found that Plaintiff had no past relevant work. AR 489.

At step five, in reliance on the VE's testimony, the ALJ concluded that Plaintiff could perform other jobs existing in significant numbers in the national economy, namely: Laundry Laborer, Industrial Cleaner and Housekeeping Cleaner. AR 490.

Accordingly, the ALJ concluded that Plaintiff was not disabled at any time since the alleged onset date of April 15, 2004. AR 491.

## VI. Issue Presented

Plaintiff begins by stating, "The ALJ failed to follow this Court's and the Appeals Council's prior remand order". MSJ at 4. Plaintiff explains:

> "In its remand order, the Appeals Council identified three specific errors. AR 555-556. First, it found that the prior decision did not fully consider whether Zamora's work activity was performed with accommodations.AR555.
> Second, it found that the prior decision did not fully address Zamora's symptoms in a manner consistent with SSR 16-3p and the Regulations. AR 556.
> Third, it found the step four and step five findings inadequately supported. Id.
> The order then directed the ALJ, in pertinent part, to obtain additional evidence, to further evaluate Zamora's symptoms, and to reconsider steps four and five.
> AR 556-557."

MSJ at 4

Plaintiff then distills the above explanation into two central arguments: 1- The ALJ did

not sufficiently develop the record (MSJ at 5), and 2-The ALJ failed to properly analyze Zamora's symptoms (MSJ at 7).

### A. Duty to Develop the Record

#### 1. Applicable Law

##### a. RFC Generally

Before proceeding to step four, the ALJ must first determine the claimant's residual functional capacity (RFC). *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018). The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

In doing so, the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995). "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins,* 466 F.3d at 883. *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

##### b. Duty to Develop the Record

"In Social Security cases the ALJ has a special duty to fully and fairly develop the record

and to assure that the claimant's interests are considered." Smolen v. Chater, 80 F.3d at 1288 (quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)); see also Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) ("In making a determination of disability, the ALJ must develop the record and interpret the medical evidence.") (citation omitted); However, the ALJ's duty to conduct an appropriate inquiry is triggered only when there is "[a]mbiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence." Tonapetyan, 242 F.3d at 1150 (citations omitted). When triggered, the ALJ "may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." Id. (citations omitted).

A specific finding of ambiguity or inadequacy in the record is not required to trigger the necessity to further develop the record where the record itself establishes the ambiguity or inadequacy. McLeod v. Astrue, 640 F.3d 881, 885 (9th Cir. 2011); Garcia v. Comm'r of Soc. *Sec.*, No. 1:19-CV-00545-SAB, 2020 WL 1904826, at *13 (E.D. Cal. Apr. 17, 2020).

The ALJ is not permitted to fill the evidentiary gaps of the record by rendering a medical judgment and interjecting his own medical opinion to develop the RFC. See Tackett v. Apfel, 180 F.3d at 1102. "As a layperson, an ALJ is not qualified to extrapolate functional limitations from 'raw medical data' but may make reasonable inferences from medical evidence susceptible to a lay understanding." see Katie E. B. v. Kijakazi, No. 20CV2354-MDD, 2022 WL 4595062, at *8 (S.D. Cal. Sept. 30, 2022).

Finally, this independent duty to fully and fairly develop the record and to assure that a claimant's interests are considered extends to the represented as well as to the unrepresented claimant. Tonapetyan v Halter, 242 F.3d at 1150 (9th Cir. 2001).

**2. Analysis**

Plaintiff highlights certain aspects of the Appeals Council's Remand order and asserts that the ALJ failed to do as instructed.

Plaintiff first argues that:

> The ALJ did not sufficiently develop the record. The Appeals Council instructed the ALJ to "obtain additional evidence," citing 20 C.F.R. §§ 404.1512 and 416.912. AR 556-557. This was a demand, not a request. After the Appeals Council's remand order, Zamora's representative submitted treatment notes from the Family Healthcare Network from April 18, 2022 through July 1, 2025, AR 669-774; and Zamora's annual program plan from Central Valley Regional Center dated April 29, 2025. AR 682-687.
>
> Despite the Appeals Council's direct instruction, the ALJ obtained no additional evidence, medical or otherwise. No consultative examination was ordered, no medical expert testified, and no medical source statement was requested. The Appeals Council imposed an affirmative duty on the ALJ to obtain evidence and develop the record. In response to this order, the ALJ did nothing.

MSJ at 5.

Plaintiff's argument continues:

> "A particularly egregious omission was the ALJ's failure to obtain Zamora's file from the Central Valley Regional Center regarding his caregiver needs and any annual evaluations that it conducted from 2022 through 2025 regarding his ability to perform work activity. The evidence submitted by Zamora's representative confirms that Zamora was still receiving assistance from this provider in April of 2025. AR 682-687. Zamora began receiving in-home supportive services in April of 2021. AR 269. Thus, there are four years of evidence from this provider that was not obtained and considered. Additionally, this evidence likely reflects directly on Zamora's ability to work"

MSJ at 5

However, Plaintiff's argument overlooks that it was his representative who took the responsibility to obtain Dr. Singh's records from Central Valley Regional Center. Specifically, the ALJ acknowledged there was missing evidence at the hearing, inquired of counsel, and it was agreed that the record would remain open and Plaintiff's counsel would obtain Dr. Singh's

Central Valley Regional Center records within two weeks. The following exchange at the hearing confirms this:

> ALJ: Okay. Alright. Very well. Now, Ms. Foss, the latest record I have is the Central Valley Regional Center Records from – at 8F. Now, I do notice that on March 13th I got a letter you guys are still looking for evidence. So did the evidence come in and maybe – I didn't see it yesterday when I checked Case Docs.
> ATTY: No, it has – oh, I apologize. I has not --
> ALJ: No, go ahead.
> ATTY: -- come in. We're still waiting for Dr. Singh's records.
> ALJ: Okay. So we should give you –
> ATTY: Two weeks should be fine, Your Honor.
> ALJ: Exactly. That was my thought exactly. So two weeks.
> ATTY: Perfect.
>
> AR 43–44.

Importantly, as Defendant explains:

> Here, the agency asked Plaintiff in writing if he had any additional medical information about his conditions, which "may include" information from welfare agencies, social service agencies, and vocational rehabilitation services. Tr. 241. Plaintiff replied "[n]o," which indicated that no further information was available. Tr. 241. This documents that the agency attempted to further develop the record. The ALJ was persuaded by the PAMFs of K. Morris, PsyD (Tr. 72), L. Montgomery, Ph.D. (Tr. 85), and A. Rugama, M.D. (Tr. 84). Tr. 486-87. The ALJ considered the entire record, including objective medical evidence, Plaintiff's self-reported abilities, and the findings of Drs. Morris, Montgomery, and Rugama. The ALJ found Plaintiff more limited than any expert suggested. Compare Tr. 72, 84-85, 485. Plaintiff asserts that the ALJ "relied on outdated opinion evidence." ECF Doc. 12 at 7. However, these PAMFs were made in July and September 2020. Tr. 72, 84-85. The period at issue spans April 2004 through September 2025; thus, these PAMFs were not outdated. Tr. 491

In addition, Plaintiff inadequately explains why the Central Valley Regional Center records are factually relevant. Plaintiff explains that he received non-descript "assistance from this provider" in April of 2025, and "began receiving in-home supportive services in April of 2021," but Plaintiff fails to explain how long he received such services and what those services entailed. AR 269. Plaintiff's argument that this evidence "likely reflects directly on Zamora's

ability to work," is purely speculative and bereft of information articulating just how/why this information would reflect on Plaintiff's ability to work.

Plaintiff next argues:[1]

> Additionally, the ALJ should have obtained a supplemental third-party report from Zamora's mother to supplement the one in the exhibit file from 2020. AR 227-235. The ALJ could also have obtained one from Zamora's brother, with whom he lived at the time of the hearing. As Zamora is autistic, evidence from his family is integral to determine his specific work-related limitations. Here there is a five year gap with no evidence from those close to him who could help explain his specific limitations. Instead of obtaining this additional evidence, the ALJ did nothing.

MSJ at 5–6.

However, because these reports would be coming from Plaintiff's own mother and brother, Plaintiff would logically be in a much better position than the ALJ to both acquire and submit them. Otherwise SSR 17-4 would have little meaning. SSR 17-4 ("Although we take a role in developing the evidentiary record in disability claims, claimants and their appointed representatives have the primary responsibility under the Act to provide evidence in support of their disability or blindness claims."). A claimant bears the burden to provide medical evidence that supports the existence of a medically determinable impairment. *Bowen v. Yuckert*, 482 U.S. 137, 146, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987); *see also Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998) ("At all times, the burden is on the claimant to establish [his] entitlement to **disability** insurance benefits"). As the Supreme Court explained, it is "not unreasonable to require the claimant, who is **in a better position** to provide information about his own medical condition, to do so." *Bowen*, 482 U.S. at 146 n.5.

Finally, Plaintiff alleges that because the ALJ neglected to obtain a medical opinion the ALJ therefore caused harmful error. MSJ at 6. However, the lack of a medical opinion does

[1] Plaintiff also discusses his former employer's letter. Since that is the primary focus of Claim II, it will be discussed there.

not create an ambiguity or inadequacy as the RFC is not a medical opinion and need not mirror one. See 20 C.F.R. § 416.927(d)(2) ("the final responsibility for deciding [RFC] is reserved to the Commissioner"); "ALJs need not seek the opinion of a medical expert every time they review new medical evidence and make a RFC determination." Bufkin v. Saul, 836 F. App'x 578, 579 (9th Cir. 2021). There is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question. Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012). Further, the regulations provide that "The decision to purchase a consultative examination will be made on an individual case basis," not that it will be purchased in every case. 20 C.F.R. 404.1519. Importantly, the law imposes a duty on the ALJ to develop the record in limited circumstances. 20 C.F.R § 416.912(d)-(f) (recognizing a duty on the agency to develop medical history, contact medical sources, and arrange a consultative examination if the evidence received is inadequate for a **disability** determination). As Defendant properly concludes, the record was neither ambiguous nor inadequate:

> Plaintiff suggests that the remand order directed the ALJ to order another consultative examination, obtain medical expert testimony, or obtain another medical source statement. ECF Doc. 12 at 5. Plaintiff is incorrect. The remand order stated that "if warranted and available" the ALJ may obtain additional evidence from a consultative examination or medical source opinion. Tr. 556-57. Within the agency's regulatory framework, the Commissioner "has broad latitude in ordering a consultative examination." Reed v. Massanari, 270 F.3d 838, 842 (9th Cir. 2001) (quoting Diaz v. Sec'y of Health and Human Serv., 898 F.2d 774, 778 (10th Cir. 1990)). To "try to resolve an inconsistency in the evidence or when the evidence as a whole is insufficient to support a determination or decision," the ALJ "may ask [a claimant] to attend one or more consultative examinations at [the agency's] expense" 20 C.F.R. §§ 404.1512(b)(2), 404.1519a, 416.912(b)(2), 416.919a (emphasis added). Here, another consultative examination was not necessary. The evidence was neither ambiguous nor inadequate for the ALJ to make a proper non-disability finding.
>
> ECF No. 13, at 3-4

Again, as Defendant pointed out above:

> Here, the agency asked Plaintiff in writing if he had any additional medical information about his conditions, which "may include" information from welfare agencies, social service agencies, and vocational rehabilitation services. Tr. 241. Plaintiff replied "[n]o," which indicated that no further information was available. Tr. 241. This documents that the agency attempted to further develop the record.
>
> Doc 13 at 2-3

Thus, Plaintiff has not established that the ALJ failed to develop the record.

**B. Subjective Complaints**

**1. Applicable Law**

An ALJ performs a two-step analysis to determine whether a Plaintiff's testimony regarding subjective pain or symptoms is credible. See Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014); Smolen, 80 F.3d at 1281; S.S.R 16-3p at 3. First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. Garrison, 759 F.3d at 1014; Smolen, 80 F.3d at 1281–82. If the claimant satisfies the first step and the ALJ finds that there is no evidence of malingering in the record, the ALJ must then evaluate the intensity, persistence and limiting effects of the claimant's symptoms to determine the extent to which those symptoms limit the individual's ability to perform work-related activities. S.S.R. 16-3p at 2.

An ALJ's evaluation of a claimant's testimony must be supported by specific, clear and convincing reasons. Burrell v. Colvin, 775 F.3d 1133, 1136 (9th Cir. 2014); see also S.S.R. 16-3p at *10. Subjective testimony cannot be rejected on the sole ground that the testimony is not entirely corroborated by the objective medical evidence in the record. Nevertheless, the medical evidence is still a relevant factor in determining the severity of Claimant's pain and its disabling effects. See, *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); S.S.R. 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

In addition, other factors considered are: 1- daily activities; 2- the location, duration,

frequency, and intensity of pain or other symptoms; 3- any applicable precipitating and aggravating factors; 4- the type, dosage, effectiveness, and side effects of any prescribed medication; 5- treatment other than medications that the claimant receives; 6- any other measures the claimant uses to relieve pain or other symptom; and 7- other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. See, 20 C.F.R. § 416.929(c)(3).

**2. Analysis**

Here, the ALJ found "that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AR 485. The ALJ found no malingering, thus the ALJ was required to identify clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's symptom testimony.

Plaintiff initially states:

> The starting point here is Zamora's subjective complaints. The Appeals Council actually named four symptoms and cited the exhibits documenting them: communication problems; the need for reminders to complete tasks; overreaction to sensory stimuli; and the need for additional guidance when performing simple tasks. AR 556.
>
> Regarding communication, the third-party function report states that Zamora is limited in communicating with a group, that instructions must be explained and rephrased before he understands them, and that he needs to be guided. AR 232. Additionally, Zamora testified that he could not keep up with the emails from his online classes or understand what they meant. AR 516. On the need for reminders to complete tasks, the function report states that he begins one task, moves to another, and must be reminded to finish what he started, and that he does not finish what he starts. AR 232. Zamora testified that he needs reminders at work to finish completing tasks because he gets "a little sidetracked." AR 520. On sensory overreaction, his employer wrote that the evening shift — loud music, a full house — was not a good match and that he was moved to mornings. AR 271. Additionally, his mother reported that he has difficulty falling asleep because he hears all noises. AR 228. On the need for

guidance with simple tasks, the employer wrote that she knew when she hired him that he was "going to need guidance & special accommodations." AR 271.

Upon remand, the ALJ determined Zamora's symptoms were not entirely consistent with the medical and other evidence. AR 485-489. The ALJ offered four reasons. First, he rejected an allegation of depression due to a lack of objective evidence. AR 488. He next cited a 2019 school record showing that Zamora asked for help and completed tasks independently in a special education setting. Id. He cited the 2020 state-agency findings as proof that Zamora could work. Id. And he noted that Zamora can attend to personal needs and help with cooking and cleaning. Id. None of the four reasons responds directly to communication, reminders, sensory tolerance, or the need for guidance. All of this evidence was already in the file when the Appeals Council remanded the claim.

This reasoning is not clear and convincing. Zamora has autism and borderline intellectual functioning. Not having depression does not impact the limitations from those impairments. As noted above, reliance on medical opinions from 2020 to support a 2025 hearing decision is improper. Moreover, Zamora's ability to perform tasks in a special education classroom or basic personal care do not transfer to work activity, and the ALJ never explained this link. See Garrison, 759 F.3d at 1016.

The ALJ's rejection of the third-party function report from Zamora's mother and the employer statement regarding work accommodations is a particularly flagrant violation of the Appeals Council's remand order. The ALJ disregarded this relevant and probative evidence because Zamora was alert and cooperative at an examination in July of 2020. AR 487-488. This evidence was already part of the record when the Appeals Council remanded this case. Upon remand, the ALJ simply disregarded the Appeals Council's instructions.

MSJ at 8–9, ECF No. 12.

Defendant responds:

Plaintiff asserts that "the ALJ simply disregarded the Appeals Council's instructions" regarding the "function report from Zamora's mother and the employer statement." ECF Doc. 12 at 9. Plaintiff is incorrect. The Appeals Council did not give the ALJ instructions specifically addressing either the function report Ms. Gonzales completed or the employer statement. Tr. 556-57. What's more, the employer statement is not as helpful to Plaintiff as he seems to suggest; it states that Plaintiff "follows instructions well." Tr. 271. Further, the ALJ appropriately addressed both the function report completed by Ms. Gonzales and Plaintiff's testimony about his prior employment, noting that Plaintiff stopped working "by choice, and not because of issues with the job, but rather because he felt he needed a change." Tr. 487-88. Plaintiff's argument lacks merit.

Resp. at 5, ECF No. 13.

First, the Undersigned agrees with Plaintiff that Plaintiff's performance in a special

education class and his ability to attend to some specific personal needs, contrasted with his considerable need for guidance and special accommodations in a work setting, is insufficient to demonstrate that these activities would adequately translate into a work environment.

Secondly, the Defendant's response set forth above is unpersuasive. To begin, the following direction given by the Appeals Council regarding the ALJ's first hearing decision is instructive:

> The [ALJ's] hearing decision indicates that the claimant's alleged symptoms and limitations are not entirely consistent with the medical evidence and other medical evidence in the record (Decision, p. 9). Even though the decision indicates that the residual functional capacity finding (RFC) "sufficiently addresse[d] the work limitations caused by the claimant's severe impairments," including social deficits, the need for routine, limited interaction with others, and learning deficits (Decision, p. 10), it did not address other symptoms documented in the record, such as the claimant's communication problems, his need for reminders to complete tasks, his overreaction to sensory stimuli, or his need for additional guidance when performing simple tasks (Exhibits 3E, pp. 1-6; 14E, 7F, pp. 4546). Because it does not appear that the decision accounted for all the claimant's alleged and documented symptoms in the RFC (Decision, p. 7), and because the decision did not explain whether they were considered or why they were discounted, further evaluation is needed in accordance with 20 CFR 404.1529 and Social Security Ruling 16-3p.

AR 556 (emphasis added).

Then, following the remand order, the ALJ's new decision contains the following commentary which includes the reasons for discounting Plaintiff's symptom allegations:

> The claimant exhibited some difficulty initiating and engaging in social contact along with difficulty tolerating changes in routine (see Exhibits 3F; 7F) and his total score on the Autism Spectrum Rating Scale (ASRS) for parent ratings was 60, which is in the slightly elevated range (see Exhibits 3F, p. 13; 7F, p. 46). His total score on the ASRS teacher ratings also fell in the slightly elevated range, with a score of 63, as both raters agreed the claimant does not behave in an atypical way in the areas of social communication and self-regulation, with overall scores falling in the average range (see Exhibits 3F, p. 13; 7F, p. 46). Clinicians diagnosed autism (see Exhibit 2F, p. 9), but examinations of the psychiatric system showed he was alert, oriented, and cooperative with intact cognitive functioning, good eye contact, and good insight and judgment (see Exhibit 10F, pp. 4, 8).
>
> The claimant reported having difficulty learning, he was assessed with a full-scale IQ of 78 (see Exhibit 6F, p. 4), which is in the borderline range, and

> clinicians diagnosed borderline intellectual functioning (see Exhibit 6F, p. 5). An education record indicated he performed in the below average range in English and math (see Exhibit 4F, p. 7) and he received special education services in school, including specialized academic instruction and speech and language services (see Exhibit 3F, p. 4). It was further noted that he would sometimes turn in work late while in school, but he also had no trouble asking for help with tasks and he was able to complete tasks independently (see Exhibit 3F, p. 6).
>
> The record shows that multiple tests of intelligence have been administered over the last ten years with results consistently falling in the low average to average range (see Exhibit 3F, p. 7), <u>but individual program plan reports also described the claimant as creative, artistic, and motivated (Exhibits 1F, p. 2; 8F, p. 6). He was noted as being able to complete most of his selfcare on his own, as he only needed reminders to wash thoroughly when bathing (Exhibit 1F, p. 2). Furthermore, while his mother provides some assistance with laundry, he can cook basic meals for himself and the record indicates he was participating in a work program through his school (Exhibit 1F, pp. 2-3). Education records showed that 61% of the time, he was in the regular class setting (see Exhibit 7F, p. 22) and overall, his school attendance was very good (see Exhibit 3F, p. 3). In addition, a mental status examination revealed a normal short-term, recent, and remote memory with a normal general fund of knowledge, satisfactory attention and concentration, and intact insight and judgment (Exhibit 6F, p. 3).</u>

AR 485-86 (emphasis added).

This commentary however falls short in properly assessing Plaintiff's ability to successfully engage in a workplace setting. For instance, 1- it is not clear what functional relevance creativity and motivation have, 2- Plaintiff's self-care is not a persuasive basis to suggest significant functionality when the ALJ acknowledged that Plaintiff needed to be reminded to wash thoroughly when bathing, and 3- despite that 61% of Plaintiff's time was spent in regular class settings, Plaintiff still received special education services. Additionally, and importantly, as Plaintiff observed, "In April of 2021, Zamora was approved for in-home supportive services for 65 hours per month. AR 269." MSJ at 10.

As a further note regarding the ALJ's reliance on Plaintiff's good school attendance, although perhaps a relevant consideration in general, there was no contention here of attendance limitations nor any instruction from the Appeals Council to consider attendance.

The following is the Defendant defense of the ALJ's reasoning:

> The ALJ discounted Plaintiff's allegations because they were not entirely consistent with the objective medical evidence. Tr. 483, 485-86. Whether a claimant's statements are consistent with objective medical evidence is a relevant consideration under the agency's regulations. 20 C.F.R. §§ 404.1529(c)(2), (c)(4), 416.929(c)(2), (c)(4); SSR 16-3p at *6. And "[w]hen objective medical evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting [the claimant's] testimony." Smartt, 53 F.4th at 498(emphasis in the original). Here, as an example, Plaintiff reported difficulty concentrating. Tr. 232, 483. However, the ALJ noted that examinations showed satisfactory concentration. Tr. 483, 486. The ALJ reasonably concluded that objective medical evidence undercut Plaintiff's allegations.
>
> Additionally, the ALJ discounted Plaintiff's statements because his reported activities showed a level of functioning that contradicted his claimed limitations. Tr. 483, 486, 489. An ALJ may discount a claimant's statements when they conflict with his activities. 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i); Molina v. Astrue, 674 F.3d 1112-13 (9th Cir. 2012). Even activities that suggest some difficulty functioning may be grounds to reject allegations if they contradict claims of total disability. Molina, 674 F.3d at 1113. Here, for example, Plaintiff reported difficulty completing tasks. Tr. 232. However, the ALJ noted that Plaintiff could cook, clean, and follow a recipe. Tr. 483, 486. Therefore, this case resembles Thomas v. Barnhart, 278 F.3d 948, 958-59 (9th Cir. 2002), where the Ninth Circuit concluded that the claimant's ability "to perform various household chores such as cooking, laundry, washing dishes, and shopping" undermined her specific complaints. Thus, just like the scenario in Thomas, because Plaintiff's reported activities contradicted his allegations to the agency, the ALJ reasonably discounted his statements
>
> Plaintiff's reported activities contradicted his allegations to the agency, the ALJ reasonably discounted his statements Plaintiff asserts that the ALJ cannot discount his allegations because the record includes evidence of his symptoms. ECF Doc. 12 at 8-11. However, it is not uncommon for the record to include evidence arguably supporting some of a Plaintiff's allegations while other evidence undermines other allegations. As a result, it is also not uncommon for two reasonable minds to reach different conclusions based on the record and the existence of an alternative interpretation of the evidence does not show that the ALJ erred. Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004). Under the substantial evidence standard of review, the Court must affirm the ALJ's finding if supported by substantial evidence in the record, regardless of whether other rational interpretations exist. Burch v. Barnhart, 400 F.3d 676, 680-81 (9th Cir. 2005). Thus, because it was reasonable for the ALJ to find some of Plaintiff's allegations inconsistent with some of the evidence, the Court should affirm this finding.

Resp. at 3–5

Here, Defendant's reliance on <u>Thomas v. Barnhart</u> is inapposite. In that case the court

affirmed where the ALJ relied on routine daily activities such as cooking and cleaning. Here, by contrast, the procedural posture of Plaintiff's situation is different. When the ALJ's initial decision was reversed and the matter was remanded for further proceedings, the remand order highlighted concerns other than routine daily activities. Specifically, the Appeals Council drew attention to Plaintiff's past work:

> In this case, it appears that the claimant's job involved other special conditions, such as extra guidance, specially arranged transportation to work and morning only shifts (Exhibit 14E, p. 2; See audio hearing at 1:50:23 – 1:59:57 PM). Furthermore, the claimant received extra breaks and may have not performed at the same standards as other employees.
>
> AR 555.

The Appeals Council cites to a letter from Plaintiff's previous employer (Ex. 14E, AR 271) where Plaintiff worked as a dishwasher at a restaurant. This letter is central to Plaintiff's second claim and was a primary focus of the Appeals Council. This letter from the restaurant owner stated:

> Max has been employed with my establishment since July 2021 as a Dishwasher. He is an excellent worker & follows instructions well. When I hired Max, I knew he was Autistic. I was willing to give him an opportunity as a Dishwasher. I knew he was going to need guidance & special accommodations. We have fulfilled that obligation. We let him step away if he feels overwhelmed. We tried scheduling him both days & evenings to see what would be a better fit. The evenings are busy. There is loud music and usually a full house since we are not only a restaurant but also a pub. We noticed the evenings were not a good match for Max. We have since scheduled him for the morning shift. At that time, he sets up the outside dining area, fills up the ice bins, places the floor mats out, makes sure all dishes, utensils & cookware are clean & ready for when we open. It is a very repetitive job. Sometimes he gets a little jittery. But we give him a chance to step away & collect himself.
>
> AR 271

As quoted above, the Appeals Council was concerned with work limitations caused by Plaintiff's severe impairments which included Plaintiff's social deficits, need for routine, limited interaction with others, and his learning deficits. These limitations caused a need for

extra guidance, arranged transportation, morning only shifts, extra breaks and presumably lower standards of performance. The Appeals Council placed significant emphasis on the need for extra breaks:

> At the hearing, the vocational expert testified that no work would be available for a worker who required extra breaks (See audio hearing at 2:25:36PM – 2:26:31PM). The RFC finding does not include the need for additional breaks and there was no discussion of how much time off-task would such breaks represent. The ALJ found three jobs the claimant could still do if he did not need the extra breaks (Decision, p 12).
>
> AR 556.

The following discussion by the ALJ at the second hearing falls short in addressing the issue of Plaintiff's potential need for additional work breaks:

> The Remand Order from the Appeals Council (see Exhibit 7A) directed that further consideration be given to the claimant's previous work activities and symptoms (including autism) and their impact on his ability to perform competitive employment. Of initial significance, the claimant notes he stopped working only weeks prior by choice, and not because of issues with the job, but rather because he felt he needed a change (hearing testimony). He further described working alone operating a dishwashing machine or washing dishes by hand, and on occasion having other duties such as mopping floors. He testified to only occasionally needing reminders to perform mopping tasks but overall described working independently in his dishwashing functions and not requiring significant prompting or special attention.
>
> AR 488.

Nor did the ALJ adequately address the contents of the employer's letter, particularly those emphasized by the Appeals Council, including "extra guidance, specially arranged transportation to work and morning only shifts . . . extra breaks and may have not performed at the same standards as other employees." AR 555.

In addition, the ALJ's focus on Plaintiff's demonstrated ability to perform the simple mechanical tasks (dishwashing by hand, operating a dishwasher, mopping), overlooks the accommodations provided to him to facilitate the performance of those tasks, such as the need for morning shifts to avoid excess exposure to sensory stimuli and extra breaks so he could

collect himself.

In sum, the Undersigned agrees with Plaintiff's following explanation:

> The ALJ's rejection of the letter from Zamora's employer leads directly to an improper analysis regarding Zamora's work activity. AR 488. Although the ALJ did not find this work to be substantial gainful activity, AR 482, his failure to find it to be accommodated work impacts the symptom analysis. Additionally, it is the most direct and probative evidence that Zamora cannot perform simple work without many accommodations. It is a letter from a first-hand witness directly explaining the accommodations that Zamora needs to perform work activity.
>
> The letter dated March 31, 2022, is from Cynthia Green, the owner of Livingstone's Restaurant & Pub, where Zamora worked as a dishwasher beginning in July 2021. AR 271. Ms. Green wrote that she knew when she hired Zamora that he was autistic and that he would "need guidance & special accommodations," and that her establishment "fulfilled that obligation." AR 271. She wrote that Zamora is permitted to "step away if he feels overwhelmed," that he sometimes "gets a little jittery," and that the restaurant gives him "a chance to step away & collect himself." AR 271. She wrote that the restaurant tried him on both day and evening shifts to determine which was a better fit, that the evenings involve loud music and a full house, that the evenings were not a good match, and that he has since been scheduled on the morning shift, where the work is "very repetitive." AR 271. She wrote that Zamora's caregiver drops him off and picks him up from work because he does not drive and does not use public transportation. AR 271. And she wrote that she "was willing to give him an opportunity" knowing of his condition, that the restaurant remains "willing to accommodate him as needed," and that it "would be negligent to dismiss Max's disability." AR 271
>
> Those statements track the criteria cited in the Appeals Council's remand order at 20 C.F.R. §§ 404.1573(c) and 416.973(c) almost item by item, AR 555: special assistance from other employees; permission to take frequent rest periods; assignment to work especially suited to the impairment; and reliance on specially arranged circumstances, which the regulation illustrates with the example of other persons helping the claimant get to and from work. The Appeals Council read this letter, found it highly probative, and instructed the ALJ to address it. AR 555. It identified extra guidance, specially arranged transportation, morning-only shifts, and extra breaks as special conditions appearing in the record, directly citing this letter. Id. As noted above, the ALJ rejected this letter because of the mental status examination in July of 2020.
>
> Additionally, the ALJ found that this job was not accommodated because Zamora was never reprimanded, quit the job voluntarily, and used a dishwasher. AR 482-489. That Zamora was never reprimanded says nothing about whether his employer adjusted his schedule, permitted him to leave his station, or arranged his work around his impairment; on Ms. Green's account the absence of discipline reflects accommodation rather than its absence. That Zamora left voluntarily bears on why the employment ended, not on how it was performed. And the third observation is a non sequitur the ALJ carried forward from step

> one, where he reasoned that "it appears the claimant performed this job in a non-accommodated manner, as he worked independently and operated machinery." AR 482. Operating a dishwashing machine is not evidence bearing on accommodation.

Finally, errors in Social Security disability determinations are subject to harmless error analysis. Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014); Ludwig v. Astrue, 681 F.3d 1047, 1054 (9th Cir. 2012). "An error is harmless if it is 'inconsequential to the ultimate nondisability determination' . . . or 'if the agency's path may be reasonably discerned,' even if the agency 'explains its decision with less than ideal clarity[.]" Treichler, 775 F.3d at 1099 (citation omitted).

Thus, it cannot be said here that the ALJ's error was inconsequential. As the Appeals Council noted, the original VE testified that extra breaks are work preclusive. AR 556. Additionally, the VE at the second hearing testified that a claimant would not be employable if he could not handle "changes in a routine work setting," because "it's not possible to guarantee that sort of an environment in any situation." AR 549.

## VII. Findings and Recommendation

For the reasons stated above, substantial evidence and applicable law do not support the ALJ's conclusion that Plaintiff was not disabled. Accordingly, the recommendation is that:

1. Plaintiff's Motion for Summary Judgment, ECF No. 12,[2] be **GRANTED**
2. Defendant's Cross Motion, ECF No. 13, be **DENIED**
3. That this action be **REMANDED** to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with these Findings and Recommendations
4. That the Clerk of Court be directed to enter judgment in favor of Plaintiff and against

[2] ECF Nos. 10, and 11 should be terminated as moot.

Defendant Commissioner of Social Security.

**VIII. Objections Due Within 14 Days**

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these Findings and Recommendations, any party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **September 20, 2026** **/s/ Gary S. Austin**
UNITED STATES MAGISTRATE JUDGE